FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

MAY 04 2009

D. MARK JONES, CLERK
BY _____
DEPUTY CLERK

Peter W. Billings, A0330
John E. S. Robson, A4130
Jason W. Hardin, A8793
FABIAN & CLENDENIN,
  A Professional Corporation
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:  (801) 531-8900
Facsimile:  (801) 596-2814
pbillings@fabianlaw.com
jrobson@fabianlaw.com
jhardin@fabianlaw.com

Attorneys for Plaintiff Federal Deposit Insurance Corporation

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver of AMERICA WEST BANK, L.C., )<br><br>Plaintiff, )<br><br>vs. )<br><br>DOUGLAS M. DURBANO, an individual; and the DURBANO LAW FIRM, P.C., a Utah professional services corporation, )<br><br>Defendants. ) | Case No. _____<br><br>**COMPLAINT**<br><br>Case: 1:09cv00056<br>Assigned To : Stewart, Ted<br>Assign. Date : 5/4/2009<br>Description: FDIC v. Durbano<br><br>Honorable _____<br><br>**FILED UNDER SEAL** |

## CONDITIONALLY LODGED

## LODGED WITH THE COURT UNDER CONDITIONAL SEAL

## PENDING COURT ORDER

## DO NOT FILE WITH CLERK OF COURT

Plaintiff Federal Deposit Insurance Corporation as receiver of America West Bank, L.C. (**"FDIC"**) complains and alleges against Defendant Douglas M. Durbano (**"Mr. Durbano"**) as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff FDIC is an independent agency of the United States of America.

2.    The orderly closing of failed banks is critical to the FDIC's mission of maintaining the stability and public confidence in the nation's financial system.

3.    Defendant Mr. Durbano is a resident of Davis County, Utah.

4.    Prior to May 1, 2009, America West Bank, L.C. was a bank regulated by the Utah Department of Financial Institutions.

5.    America West Bank Members, L.C. is a registered bank holding company (**"Holding Company"**) that owned America West Bank, L.C.

6.    Mr. Durbano was Chairman of the Board and Chief Executive Officer of both Holding Company and America West Bank.  Mr. Durbano also acted as an attorney for the bank.  Mr. Durbano's services for the Bank and Holding company were provided under an "Agreement to Provide Professional Services/Employee Lease Agreement."  That agreement and subsequent modifications are attached as Exhibit A.

7.    On May 1, 2009, the Utah Department of Financial Institutions closed America West Bank L.C (**"Failed Bank"**).

8.　　At the request of the Utah Department of Financial Institutions and pursuant to court order of the Second District Court of the State of Utah, the FDIC was appointed receiver of Failed Bank.

9.　　This Court has federal question jurisdiction over this entire action pursuant to 12 U.S.C. 1819(b)(2).

10.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Mr. Durbano resides in Utah and the Bank was located in Utah.

## FACTUAL ALLEGATIONS

11.　　Upon being appointed receiver the FDIC entered into a purchase and assumption agreement with Cache Valley Bank whereby Cache Valley Bank purchased certain Failed Bank assets and assumed the deposit liabilities of Failed Bank.

12.　　The FDIC is, pursuant to 12 U.S.C. § 1821(d)(2), the owner of Failed Bank's books, records and assets including all copies.

13.　　On March 31, 2009 Mr. Durbano signed a System Access Request Form to obtain complete access . . . to all Bank . . . systems." A copy of that Access Request Form is attached as Exhibit B.

14.　　On April 4, 2009, Curt Lalli, Failed Bank's IT Manager sent a memo to Failed Bank's Board of Directors indicating that Mr. Durbano had requested "a complete backup of the Bank's systems for legal purposes." A copy of that memorandum is attached as Exhibit C.

15.　　Mr. Lalli's memorandum was included with the agenda for Failed Bank's April 17, 2009 board meeting.

16.     At the April 17, 2009 Board of Director's Meeting Mr. Durbano stated that the bank had executed an agreement with his law firm, the Durbano Law Firm, to obtain and store a complete duplicate copy of all bank records, including hard copies and an electronic copy.

17.     At that meeting Mr. Durbano also stated that he was having this copy made because he feared the FDIC would sue him personally, because he believed during any such suit the FDIC would not give him access to all of the records but would only "pick and choose what they wanted him to see," and because he did not trust the FDIC.  During this discussion, Mr. Durbano used numerous expletives and derogatory comments when referring to the FDIC.

18.     At a subsequent meeting on April 30, 2009, Mr. Durbano informed those present that he had obtained an electronic copy of all bank records (**"Electronic Information"**) as well as some hard copies of various accounting records.

19.     The electronic records copied by Mr. Durbano contained Failed Bank customer information including account numbers, taxpayer identification numbers (including social security numbers), account information and other personally identifiable information.

20.     As evidenced by the Systems Access Request form and Mr. Lalli's memo to the Board of Directors, Failed Bank had established procedures to safeguard its information including its customers' personally identifiable information.

21.     A backup of Failed Bank's electronic files and systems in the hands of an unauthorized individual creates significant security risks to Failed Bank.  For instance, a person

with such a backup would have information making it significantly easier to compromise and "hack into" Failed Bank's online systems.

22.    Mr. Durbano has also previously filed a suit against the Bank related to an individual who embezzled funds from Mr. Durbano.

23.    Bank documents related to that lawsuit were in the possession of one of the Bank's directors, Greg Haws. Shortly before the Bank was closed, Mr. Durbano instructed one of his employees to obtain the documents from Mr. Haws and deliver them to him.

24.    Once Failed Bank was closed by the State of Utah, Mr. Durbano was no longer authorized to have in his possession or under his control books, records or assets of Failed Bank even if he had originally obtained them for a proper business purpose of the Bank.

25.    On Saturday May 2, the FDIC and its counsel made several attempts to contact Mr. Durbano to secure the return of the hard drive that contains the Electronic Information and to secure a return of the hard copies of the various accounting documents (**"Accounting Documents"**) in his possession. Although the FDIC has not been able to speak directly with Mr. Durbano, it has been informed that Mr. Durbano received its request for the return of the information.

26.    Mr. Durbano has not returned any records or property to the FDIC and has not given the FDIC any assurance that he will return any records or property to the FDIC.

27.    Mr. Durbano's failure to return highly sensitive records of Failed Bank has created serious problems with the orderly closure of Failed Bank and with the transaction between the FDIC as receiver and Cache Valley Bank as purchaser of certain assets. These

problems jeopardize the FDIC's mission of maintaining the stability and public confidence in the nation's financial system.

## FIRST CLAIM FOR RELIEF
### (Conversion)

28.     FDIC realleges and incorporates by reference paragraphs 1 through 27 above.

29.     Failed Bank, in the course of its business, created and stored records which contained sensitive, nonpublic, personally identifiable information about its customers.

30.     Failed Bank, in the course of its business, created accounting records, which similarly contained sensitive, nonpublic information about its customers.

31.     Failed Bank expended considerable sums of money and time compiling, securing, and protecting the personally identifiable information of its customers in these documents. This includes, but is not limited to, instituting policies to maintain the security and confidentiality of both electronic and hard copies of this information.

32.     Defendants Mr. Durbano and the Durbano Law Firm made a complete duplicate copy of the Electronic Information.

33.     Defendant Mr. Durbano copied the Electronic Information because he feared the FDIC would sue him personally, because he believed during any such suit the FDIC would not give him access to all of the records but would only "pick and choose what they wanted him to see," and because he did not trust the FDIC.

34.     In order to access the Electronic Information, Mr. Durbano and the the Durbano Law Firm made a written request using a "System Access Request Form" on March 31, 2009. This Form, when authorized, allowed Defendants to access the Electronic Information

"for business purposes only . . . ."  Furthermore, Durbano and the the Durbano Law Firm agreed "that the contents [of the Electronic Information] thereof are considered confidential and proprietary to the company, but not to myself."

35.    Mr. Durbano and the Durbano Law Firm currently possess copies of the Electronic Information.

36.    Mr. Durbano and the Durbano Law Firm currently possess hard copies of accounting documents that belong to Failed Bank.

37.    Mr. Durbano and the Durbano Law Firm no longer have any affiliation with Failed Bank, and therefore, are not entitled or authorized to possess copies of the Electronic Information and Accounting Documents.

38.    Federal law recognizes that the FDIC, as receiver, succeeds to title to the books, records, as well as copies of such books and records, of the Failed Bank.

39.    Severable attempts have been made to contract Mr. Durbano to arrange for the return of the copies of the Electronic Information and Accounting Documents, but this information has not been returned.  Although the FDIC has not spoken directly with Mr. Durbano, it has been informed that Mr. Durbano received its request for the return of the Electronic Information and Accounting Documents.

40.    Mr. Durbano and the Durbano Law Firm have not returned any records or property of Failed Bank to the FDIC and have not given the FDIC any assurance that either of them intend to return any such records or property.

41.     Such action demonstrates an intent by Mr. Durbano and the Durbano Law Firm to exercise dominion and/or control over copies of the electronics information inconsistent with the FDIC's rights.

42.     As a direct and foreseeable consequence of the conduct of Mr. Durbano and the Durbano Law Firm, the FDIC has been harmed in an amount to be proven at trial. Defendants' acts and conduct constituting conversion were carried out willfully, fraudulently, maliciously and with the wanton disregard of FDIC's rights, thereby entitling the FDIC to an award of punitive damages.

## SECOND CLAIM FOR RELIEF
### (Breach of Written Contract)

43.     The FDIC realleges and incorporates by reference paragraphs 1 through 42 above.

44.     On March 31, 2009, Mr. Durbano and the Durbano Law Firm entered into an information access agreement. Mr. Durbano and the Durbano Law Firm executed a System Access Request Form (**"Agreement"**) for Failed Bank on March 31, 2009, purportedly granting them "complete access as necessary for legal reasons to all bank . . . systems." (*See* Ex. B.)

45.     The Agreement expressly stated that "the Bank's computer and information systems are to be used for business purposes only." (Emphasis added.) Further, Durbano and the Durbano Law Firm agreed "that the contents thereof are considered confidential and proprietary to the company, but not to myself." (*See* Ex. B.)

46.     This Agreement constitutes a valid and binding written contract. Good and valid consideration exists for this contract, as access to the information for Mr. Durbano and

the Durbano Law Firm was expressly conditioned upon the acceptance of the terms of the Agreement that the computer and information systems are to be used for business purposes only.

47.     Failed Bank has performed all of its obligations under the Agreement.

48.     Mr. Durbano and the Durbano Law Firm unjustifiably and inexcusably breached their obligations under the Agreement.  During an April 17, 2009 Board of Director meeting Mr. Durbano stated that he was obtaining a copy of all bank records because he feared the FDIC *would sue him personally* and because he believed during any such suit the FDIC *would not give him* access to all of the records, but would only "pick and choose what they wanted *him* to see."

49.     Clearly, the initial acquisition of the bank records by the Durbano Law Firm was for Mr. Durbano's personal use, not "for business purposes" of Failed Bank.  Obtaining the information in the first place was thus a breach of the information access agreement.

50.     Furthermore, now that the FDIC has become receiver and assets have been sold to Cache Valley Bank, Durbano is no longer authorized to have in his possession or under his control books, records or assets, and copies of such items, of Failed Bank.  As such, he no longer has any "business purpose" that legitimizes his continued retention of the bank records. Instead, his refusal to return the admittedly "confidential and proprietary" documents is another breach of the information access agreement.

51.     As a result of these breaches, and to the extent such damage can be quantified, the FDIC has been damaged in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets)

52.     The FDIC realleges and incorporates by reference paragraphs 1 to 51
above.

53.     Failed Bank enjoyed an advantage over its existing and would-be
competitors in the design, development, adaptation, production, promotion, service, and
marketing of Failed Bank's financial products and services because of the Electronic Information
and Accounting Documents it compiled and protected about its customers. If Failed Bank's
competitors were to access this Electronic Information, it would enable these competitors to
obtain valuable insight and information about Failed Bank's customers that might allow
competitors to thereby gain an unfair competitive advantage over Failed Bank.

54.     Failed Bank also spent considerable time, energy and sums of money in
creating a proprietary system to secure and protect the Electronic Information.

55.     Failed Bank has made reasonable efforts under the circumstances to
preserve the confidentiality of these trade secrets. Such information derives independent
economic value from not being generally known to the public or to other persons who can obtain
economic value from their disclosure or use. Accordingly, Failed Bank's confidential
information, including, but not limited to the Electronic Information, as well as its proprietary
system for managing and securing the Electronic Information, constitutes "trade secrets," under
Utah's Uniform Trade Secrets Act, Utah Code Annotated section 13-24-1, *et seq.*

56.     Mr. Durbano and the Durbano Law Firm have acquired the Electronic
Information as well as a copy of Failed Bank's proprietary system for managing and securing the
Electronic Information.

57.     Failed Bank's employees and counsel, including Mr. Durbano and the Durbano Law Firm, were required to keep Failed Bank's Electronic Information secret, and not to use or disclose such information other than for the benefit of Failed Bank and with Failed Bank's express authorization. Mr. Durbano and the Durbano Law Firm knew or should have known that they acquired such information under circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or derived such information from or through a person who has such a duty, and/or accessed Failed Bank's Electronic Information and Accounting Documents through improper means. Nevertheless, on information and belief, Mr. Durbano and Durbano Law Firm used improper means to acquire the trade secrets of Failed Bank.

58.     Mr. Durbano and Durbano Law Firm obtained the confidential information described above directly or indirectly from Failed Bank and not from generally available information on their own independent research and efforts.

59.     The actions of Mr. Durbano and Durbano Law Firm constitute misappropriation of Failed Bank's trade secrets under Utah Law

60.     As a direct and proximate cause of Defendants' misappropriation of Failed Bank's trade secrets, Defendants have been unjustly enriched, and the FDIC has sustained damages in an amount to be proven at trial. The FDIC has also suffered irreparable injury that cannot be adequately remedied at law unless Mr. Durbano and Durbano Law Firm, and all other persons acting in concert with them, is enjoined from engaging in any further such acts of misappropriation.

61. Each of the acts of misappropriation was done willfully and maliciously by Mr. Durbano and Durbano Law Firm, thereby also entitling the FDIC to an award of exemplary damages and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FDIC prays that the Court:

1. Enter judgment in favor of FDIC and against Mr. Durbano and Durbano Law Firm on all Claims for Relief.

2. Preliminarily and permanently enjoin Mr. Durbano and Durbano Law Firm and all persons or entities acting in concert with either of them, from directly or indirectly:

 a. Using, deleting, destroying, modifying, moving, copying or disclosing any of Failed Bank's confidential, proprietary, trade secret, or nonpublic personal information currently the possession, custody, or control, of Mr. Durbano or Durbano Law Firm;

 b. Obtaining, accessing, retrieving, using, deleting, destroying, modifying, moving, copying or disclosing any originals or copies of documents containing Failed Bank's confidential, proprietary, trade secret or nonpublic personal information; and

3. Order the immediate impoundment and return to FDIC of all Failed Bank property including but not limited to all original or copies of documents containing Failed Bank's confidential, proprietary, trade secret or nonpublic personal information;

4.      Order such other relief as the Court deems just and equitable.

DATED and signed this ⟋⟍ day of May 2009.

_____

Peter W. Billings
John E. S. Robson
Jason W. Hardin
FABIAN & CLENDENIN,
Attorneys for Plaintiff
   Federal Deposit Insurance Corporation

# Exhibit A

## AGREEMENT TO PROVIDE
## PROFESSIONAL SERVICES/EMPLOYEE
## LEASE AGREEMENT

This Agreement is made effective as of January 1, 2006, by and between the Durbano Law Firm, P.C., Professional Services Corporation (hereinafter "PSC") and America West Bank, L.C. and/or its holding company, America West Bank Members, L.C. (hereinafter collectively "AWB"), and all collectively referred to as the "Parties.

### RECITALS

The Parties recite and declare:

A.   AWB wishes to contract with PSC for the services of PSC in providing professional or skilled services in the general fields of Chairman of the Board of both the bank and its holding company; CEO and President of both the bank and its holding company (hereinafter "Services").

B.   PSC is ready, willing and able to provide such services as may be required by AWB, and specifically lease to AWB the services of Douglas M. Durbano, a licensed professional (hereinafter "Durbano").

IN CONSIDERATION OF THE ABOVE RECITALS, the terms and covenants of this Agreement and other good and valuable consideration, the receipt and adequacy which is hereby acknowledged, the Parties agree as follows:

**SECTION I:  SERVICES**:  PSC understands and agrees that it shall provide the professional services of Durbano to AWB who shall function in the capacity as a director, Chairman of the Board, CEO and President of AWB providing the services as directed by the Board of Directors of the respective companies. AWB hereby leases from PSC the services of Durbano, who is a licensed professional by the Utah State Bar Association. It is understood that the relationship between the Parties is that of a lessee/ lessor of an employee as Durbano shall at all times remain the full time employee of PSC. Durbano shall perform his services as an independent contractor, with AWB maintaining the right to control or direct only the results of the work and not the means or methods of accomplishing the results. PSC shall hire Durbano, control the payment of wages, provide for unemployment insurance and other benefits, as well as maintain professional malpractice insurance in behalf of Durbano.  As such, Durbano shall not participate in the employee benefit programs of AWB including benefits of retirement, 401K, health insurance, dental insurance, vision insurance, and other common employee benefits paid in behalf of employees of AWB.

It is anticipated that PSC shall provide and make available the services of Durbano as needed by AWB, at no more than 35 working hours per work week, totaling approximately 1,820 hours per year. AWB may, at its discretion, pay the compensation stated below, as it may decide between America West Bank, L.C. or its holding company, America West Bank Members, L.C. Further, PSC shall limit Durbano's professional services to no more than 3 total clients during the term of this Agreement.

**SECTION II: LEASE AMOUNT**: For services provided under and pursuant to this Agreement and pursuant to the request of AWB, PSC shall be compensated as provided below:

a.      TWENTY THOUSAND FIVE HUNDRED DOLLARS ($20,500.00). Payable per month to be paid to PSC on or before the 10th day of each month during the term of this Agreement.

b.      Actual expenses incurred by PSC or Durbano in providing the services and directly relating to such services shall be reimbursed by AWB at the actual costs of such expenses supported by appropriate receipts.

c.      A bonus payment, both subjective and objective, on a yearly basis or otherwise as the Board of Directors of AWB may decide from time to time, as based upon certain quantifiable goals set by the Board.

## SECTION III: DURATION AND TERMINATION:

This Agreement shall become effective as of the date stated above and shall continue for a period of twelve (12) months thereafter. In addition, this Agreement may be terminated pursuant to the following:

1.      Immediately upon the death or incapacity of Durbano; or
2.      By either party, with or without cause, at any time, upon ninety (90) days prior written notice; or
3.      By AWB at any time, upon ninety (90) days written notice if either party assigns this Agreement, or any right or obligation under this Agreement without the other party prior written consent; or if there is a change in the control or management of PSC which is unacceptable to AWB; or, if PSC ceases to function as a going concern, or to conduct its operations in the normal course of business.

Upon termination of this Agreement, PSC will return to AWB all written information, drawings, models or other materials or files applied to PSC or created by PSC at the expense of AWB.

## SECTION IV: MISCELLANEOUS:

a.      Indemnification: PSC agrees to indemnify and hold AWB, its officers, agents and employees harmless from and against any and all liabilities, damages, losses, actions, or causes of action, costs, taxes or penalties, and expenses (including attorneys fees), whether relating to property of AWB or any third party, or to personal injury or death, arising out of or any way contributed to by the acts or failure to act of PSC, its agent Durbano, its employees, officers or supplied workers.

b.      Independent Contractor: The status of PSC in relation to AWB is that of a professional independent contractor, and not as an employee of AWB and, as such, PSC shall not have the right or power to enter into any contracts, agreements, or any other commitments on behalf of AWB. The status of Durbano in relation to AWB is that of a leased employee and Durbano shall have the right and power to enter into contracts, agreements or other commitments on behalf of AWB consistent with his duties as Chairman of the Board and President of AWB.

c.   Taxes and Insurance: PSC shall maintain in full force and effect, and upon the request of AWB, shall furnish evidence satisfactory to AWB that PSC maintains the following insurance coverages:

    1.   Comprehensive general liability insurance in the minimum amount of $1,000,000 combined single limit that will cover any and all losses to AWB property, property of third parties, or personal injuries caused by the acts or omissions of PSC, its employees and/or agents.

    2.   For any vehicle utilized by PSC or Durbano, vehicle liability insurance in the amount of $1,000,000 combined single limit.

    3.   Professional malpractice insurance with a $5,000 deductible and a per incident limit of $500,000 and total limit of $1,000,000.

    4.   PSC will carry Workers Compensation and Employers Liability Insurance in accordance with applicable Utah Law.

d.   Entire Agreement: This Agreement shall constitute the entire agreement between the Parties and any part or understanding or representations of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement.

e.   Modifications: Any modification to this Agreement or additional obligations assumed by either party in connection to the Agreement shall be binding only if evidenced in writing, signed by each party or an authorized representative of each party.

IN WITNESS WHEREOF, each party to this Agreement has caused it to be executed at Layton, Utah, on the dates indicated below.

AMERICA WEST BANK, L.C.

BY: _____  1·17·06
                           Date
ITS: _CFO /See._____

DURBANO LAW FIRM, P.C.

BY: _____  1/16/06
                           Date
ITS: _Pres_____

AMERICA WEST BANK MEMBERS, L.C.

BY: _____  1·17·06
                           Date
ITS: _Sec. / CFO_____

ACKNOWLEDGED:

_____  1/16/06
Douglas M. Durbano           Date

(C/AWB/Lease.Agr)

**MODIFICATION; AMENDMENT AND RENEWAL**
**OF AGREEMENT TO PROVIDE**
**PROFESSIONAL SERVICES/EMPLOYEE**
**LEASE AGREEMENT**
# Year-2007

This Modification; Amendment and Renewal of the Agreement to Provide Professional Services/Employee Lease Agreement which was dated January 1, 2006(the "Agreement") is entered into on the 1st day of January 2007 and is effective as of January 1st, 2007. The Agreement was and is by and between The Durbano Law Firm; America West Bank and America West Bank Members LC.

The Agreement is hereby modified, amended and renewed as follows:

1. The Duration and Term of the Agreement shall be extended for twelve (12) additional months, from January 1st, 2007 until December 31st, 2007.

2. The monthly retainer Employee Lease Amount shall be payable monthly and increased to the amount of Twenty Four Thousand, Two Hundred and Fifty dollars ($24,250.00) per month, as detailed below:

> Base Retainer------$20,000.
> Board Retainer-----$ 3,000.
> Misc.; H.I.; Costs--$1,250.
> Total---------------$24,250.

All other terms and conditions of the Agreement that are not specifically modified, amended or altered by this document shall remain in effect, the same, and the Parties hereby renew, agree to be bound and restate the Agreement in full, as modified hereby.

AMERICA WEST BANK                1·2·07

BY: _____
                              Date

ITS: See.

AMERICA WEST BANK MEMBERS, L.C.     1·2·07

BY: _____
                              Date

ITS: See.

DURBANO LAW FIRM, P.C.

BY: _____ 1/1/07
                              Date

ITS: Pres

ACKNOWLEDGED:

_____
Douglas M. Durbano

(AWB-Amend 2007 Employ/Lease.Agr)

**MODIFICATION; AMENDMENT AND RENEWAL**
**OF AGREEMENT TO PROVIDE**
**PROFESSIONAL SERVICES/EMPLOYEE**
**LEASE AGREEMENT**
# Year-2008

This Modification; Amendment and Renewal of the Agreement to Provide Professional Services/Employee Lease Agreement which was dated January 1, 2006(the "Agreement") is entered into on the 1st day of January , 2008 and is effective as of January 1st, 2008.  The Agreement was and is by and between The Durbano Law Firm; America West Bank and America West Bank Members LC.

The Agreement is hereby modified, amended and renewed as follows:

1. The Duration and Term of the Agreement shall be extended for twelve (12) additional months, from January 1st, 2008 until December 31st, 2008.

2. The monthly retainer Employee Lease Amount shall be payable monthly and increased to the amount of Twenty Seven Thousand, dollars ($27,000) per month, as detailed below:

> Base Retainer------$22,5000 .
> Board Retainer-----$ 3,000 .
> Misc.; H.I.; Costs--$1,500
> Total----------------$27,000 .

All other terms and conditions of the Agreement that are not specifically modified, amended or altered by this document shall remain in effect, the same, and the Parties hereby renew, agree to be bound and restate the Agreement in full, as modified hereby.

AMERICA WEST BANK              1·22·08   AMERICA WEST BANK MEMBERS, L.C.

BY: _____        BY: _____  1·22·08
                          Date                                Date
ITS: Secretary / Treasurer          ITS: Secretary / Treasurer .

DURBANO LAW FIRM, P.C.              ACKNOWLEDGED:

BY: _____        _____  4/8/08
                          Date      Douglas M. Durbano
ITS: Pres.      1/8/08

(AWB-Amend 2008 Employ/Lease.Agr)

## MODIFICATION; AMENDMENT AND RENEWAL
## OF AGREEMENT TO PROVIDE
## PROFESSIONAL SERVICES/EMPLOYEE
## LEASE AGREEMENT
# Year-2009

This Modification; Amendment and Renewal of the Agreement to Provide Professional Services/Employee Lease Agreement which was dated January 1, 2006(the "Agreement") is entered into on the 22 day of January , 2009 and is effective as of January 1st, 2009. The Agreement was and is by and between The Durbano Law Firm; America West Bank and America West Bank Members LC.

The Agreement is hereby modified, amended and renewed as follows:

1. The Duration and Term of the Agreement shall be extended for twelve (12) additional months, from January 1st, 2009 until December 31st, 2009.

2. The monthly retainer Employee Lease Amount shall be payable monthly and decreased to the amount of Twenty Five Thousand, dollars ($25,000) per month, as detailed below:

> Base Retainer------$21,0000 .
> Board Retainer-----$ 2,500 .
> Misc.; H.I.; Costs--$ 1,500
> Total---------------$25,000 .

All other terms and conditions of the Agreement that are not specifically modified, amended or altered by this document shall remain in effect, the same, and the Parties hereby renew, agree to be bound and restate the Agreement in full, as modified hereby.

AMERICA WEST BANK                    AMERICA WEST BANK MEMBERS, L.C.

BY: _____ 1-23.09          BY: _____ 1.23.09
              Date                                Date
ITS: Secretary / Treasurer          ITS: Secretary / Treasurer

DURBANO LAW FIRM, P.C.               ACKNOWLEDGED:

BY: _____ 1/22/09          _____ 1/22/09
              Date                  Douglas M. Durbano
ITS: Pres

(AWB-Amend 2009 Employ/Lease.Agr)

**MODIFICATION; AMENDMENT AND RENEWAL
OF AGREEMENT TO PROVIDE
PROFESSIONAL SERVICES/EMPLOYEE
LEASE AGREEMENT**
# Year-2009

This Modification; Amendment and Renewal of the Agreement to Provide Professional Services/Employee Lease Agreement which was dated January 1, 2006(the "Agreement") is entered into on the ___ day of _____ , 200__ and is effective as of January 1st, 2009. The Agreement was and is by and between The Durbano Law Firm; America West Bank and America West Bank Members LC.

The Agreement is hereby modified, amended and renewed as follows:

1. The Duration and Term of the Agreement shall be extended for twelve (12) additional months, from January 1st, 2009 until December 31st, 2009.

2. The monthly retainer Employee Lease Amount shall be payable monthly and decreased to the amount of Twenty Five Thousand, dollars ($25,000) per month, as detailed below:

> Base Retainer------$21,0000 .
> Board Retainer-----$ 2,500 .
> Misc.; H.I.; Costs--$ 1,500
> Total---------------$25,000 .

All other terms and conditions of the Agreement that are not specifically modified, amended or altered by this document shall remain in effect, the same, and the Parties hereby renew, agree to be bound and restate the Agreement in full, as modified hereby.

AMERICA WEST BANK                    AMERICA WEST BANK MEMBERS, L.C.

BY:_____         BY:_____
                      Date                                         Date
        ITS:_____               ITS:___ _____.

DURBANO LAW FIRM, P.C.               ACKNOWLEDGED:

BY:_____          _____
                    Date             Douglas M. Durbano
        ITS:_____

(AWB-Amend 2009 Employ/Lease.Agr)

# Exhibit B



**America West Bank**   *A Member Owned Bank*

476 W. Heritage Park Blvd., Layton, UT 84041 PH: (801) 927-6600 Fax: (801) 927-6606 www.myAWB.com


**Member FDIC**

## System Access Request Form Appendix A

**Authorization Requested:**

☒ Add ☐ Change ☐ Delete ☐ Other

Employee Name: Durhang Law Firm        Position: Attorney

Department: _____            Location: _____

Approved By: _____           Date: _____

**Type of Access Required:**

☐ Fiserv: See Appendix B   ☐ NACM                          ☐ Moodys        ☐ Ontrack
☐ Depcon                   ☐ NACM Mortgage-Factual Data    ☐ Tax Analysis
☐ Laser Pro                ☐ State of Utah Business Inquiries ☐ T-Soft
☐ EasyLender               ☐ Point
☐ Accounts Payable         ☐ Loan Prospector

*Complete access as necessary for legal reasons to all bank and Fiserv systems.*        *CJ 3-31-2009*

**For IT Department Use Only:**

User ID: ddurbano        Navigator C Number: _____        Effective Date: 3/31/2009

Completed By: _____        Phone Extension: _____

I, DOUGLAS M. DURBANO , certify herewith that I have received a copy of the America West Bank Network and Computer Use Agreement Policy and that I have read and understand the policy. Further, I certify that I will comply with the objectives of the policy and that I will conduct all of my activities, both professional and personal, in compliance with the practices stated in the Policy.

I understand that the Bank's computer and information systems are to be used for business purposes only and that the contents thereof are considered confidential and proprietary to the company, but not to myself.

These systems are for the use of authorized users only. Individuals using these systems without authority, or in excess of their authority, are subject to having their activities on this system monitored, recorded, and/or denied.

I further understand that failure to comply with the Bank's Network and Computer Use Agreement Policy could lead to disciplinary action up to and including termination of employment and/or possible legal action.

Name: DOUGLAS DURBANO        Date: 3/31/09

Signature of employee: _____

# Exhibit C





To:     **AWB Board of Directors**

CC:

From:   **Curt Lalli**

Date:   **04/04/2009**

Re:     **Monthly IT Update**

As in house legal counsel, Doug Durbano has requested a complete backup of the bank systems for legal purposes. He has signed a system access request noting this, and has agreed to confidentiality statements as a part of that agreement. This has also been added to the IT GLBA risk matrix. This memo is official notice of this, and presumes the board's approval. If anyone on the board does not approve please see me at your earliest convenience.

The bank moves forward. IT is working on ways for customers to securely apply for mortgages online, and to give access for various mortgage loan officers to bank systems remotely. We have also opened up St. George again, and they are functioning.

**Overall:**
No security violations were detected last month. All systems are stable, and all upgrades/installs were successful in March.

Thank you,

Curt Lalli
IT Manager